IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CRISS McELDRIDGE CLAY,

          **Plaintiff,**

        **v.**                                **CASE NO. 20-3120-SAC**

JACOB EARLY, et al.,

          **Defendants.**

**MEMORANDUM AND ORDER
AND ORDER TO SHOW CAUSE**

Plaintiff Criss McEldridge Clay is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this case should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.   Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

**I.   Nature of the Matter before the Court**

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.   The Court granted Plaintiff leave to proceed *in forma pauperis*. (Doc. 3.)   Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF").

Plaintiff alleges that on March 9, 2020, after he had finished eating dinner in the chow hall, Plaintiff was walking out the door when Defendant Early and another security member approached Plaintiff.   Defendant Early instructed Plaintiff to turn around and cuff up because he noticed that Plaintiff's top button of his restriction jumpsuit was unbuttoned while Plaintiff was eating. Plaintiff informed Early that it constricts his throat.   Defendant Early took Plaintiff to a strip out room and started the strip out procedure.   Defendant Early asked Plaintiff to squat and cough, and then told Plaintiff to do it again and to stick Plaintiff's finger inside his anal cavity.   Plaintiff did

as instructed.  Plaintiff was left in the strip out room for about twenty minutes before being released back to population.

Plaintiff alleges that Defendant Early and others use strip searches as punishment. Plaintiff alleges that instructing him to put his finger into his anal cavity was a violation of his privacy, and Plaintiff should have been allowed to go to a dry cell.   Plaintiff alleges that his failure to button his top button is not a legitimate security concern warranting a strip search.   Plaintiff alleges that he is transgender and Defendant Early harasses him by making comments about Plaintiff being a man and not a woman and conducting trivial searches to look at Plaintiff. Plaintiff alleges that the harassment started when staff wanted to find out Plaintiff's gender.

Plaintiff alleges that Warden Schnurr has a duty to protect Plaintiff from sexual abuse, forces Plaintiff to be around Defendant Early, and condones inappropriate and harassing strip searches.

Plaintiff names as Defendants: Jacob Early; SST CO1 Officer at HCF; and Daniel Schnurr, Warden at HCF.  Plaintiff sues the Defendants in their individual capacities.  Plaintiff seeks $130,000 for "harassing behavior, emotional distress/mental," and seeks to prevent Defendant Early from doing strip searches, to provide training, and to move Plaintiff or reassign Defendant Early.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that

seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163

(10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Fourth Amendment Claim

Plaintiff alleges that the strip search violated his Fourth and Eighth Amendment rights. A strip search of an inmate may implicate both "Fourth Amendment privacy interests and Eighth Amendment Cruel and Unusual Punishment concerns." *Harris v. Rocchio*, 1997 WL 787185, *2 (10th Cir. Dec. 24, 1997).

Although the Supreme Court has foreclosed any Fourth Amendment challenge to the search of a prison cell, the court "has recognized a qualitative difference between property

searches and searches of a prisoner's person."   *Dunn v. White*, 880 F.2d 1188, 1191 (10th Cir. 1989).   The Supreme Court in *Bell v. Wolfish*, preserved a prisoner's privacy interest in the integrity of his own person, and applied a traditional Fourth Amendment analysis to a constitutional challenge by prisoners to personal body searches.   *Dunn*, 880 F.2d at 1191 (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)).

The Supreme Court developed a balancing test to evaluate the reasonableness of a strip search.   *Bell*, 441 U.S. at 559.   Factors to be considered in the balancing process include: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating it; and (4) the place in which the search is conducted.   *Id*.   Given these considerations, *Bell* held that visual body-cavity strip searches without probable cause were reasonable in light of correctional security needs.   *Id*. at 559–60; *see also Leek v. Miller*, 698 F. App'x 922, 926 (10th Cir. 2017) (unpublished) (stating that "strip searches of prisoners are not per se prohibited") (citing *Farmer v. Perrill*, 288 F.3d 1254, 1260 (10th Cir. 2002) (recognizing that prisoner strip searches must be "reasonably related to a legitimate penological interest" (emphasis omitted))).

"In addressing this type of constitutional claim courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security."   *Florence v. Board of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318, 322–23 (2012); *see also Whitehead v. Marcantel*, 766 F. App'x 691, 700 (10th Cir. April 2, 2019) (unpublished) (allegation failed to state a valid claim for relief where plaintiff failed to plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest).   The Court in *Bell*:

> emphasized that "preserving internal order and discipline are essential goals that may require limitation or retraction of the

> retained constitutional rights of convicted prisoners." . . . . "Prison
> officials must be free to take appropriate action to ensure the safety
> of inmates and corrections personnel . . . .   Accordingly, we have
> held that even when an institutional restriction infringes a specific
> constitutional guarantee, . . . the practice must be evaluated in light
> of the central objective of prison administration, safeguarding
> institutional security."  . . . Thus, on issues of "internal order and
> discipline" or "institutional security," courts should accord
> "wide-ranging deference" to prison officials, unless there is
> "substantial evidence in the record to indicate the officials have
> exaggerated their response."

*Dunn*, 880 F.2d at 1191 (quoting *Bell*, 441 U.S. at 546–48) (internal citations omitted).  The

Supreme Court has recently acknowledged that this type of procedure is reasonable and designed

to uncover contraband:

> Petitioner acknowledges that correctional officers must be allowed
> to conduct an effective search during the intake process and that this
> will require at least some detainees to lift their genitals or cough in a
> squatting position. These procedures, similar to the ones upheld in
> *Bell*, are designed to uncover contraband that can go undetected by a
> patdown, metal detector, and other less invasive searches.

*Florence*, 566 U.S. at 334.  "[C]orrectional officials must be permitted to devise reasonable

search policies to detect and deter the possession of contraband in their facilities."  *Id*. at 328; *see*

*also Hudson v. Palmer,* 468 U.S. 517, 522–523 (1984); *Block v. Rutherford,* 468 U.S. 576, 584–

585 (1984).

Plaintiff's claims involve a single strip search that was conducted in a private room.  *See*

*Hyberg v. Enslow*, 801 F. App'x 647, 650–51 (10th Cir. Feb. 21, 2020) (unpublished) (finding no

constitutional violation despite plaintiff's conclusory allegation that search was conducted in a

demeaning and derogatory way) (citing *Farmer*, 288 F.3d at 1260 (recognizing a strip search may

be unreasonable if conducted in the open, "visible to a number of other inmates and staff," and

without regard for the inmate's privacy interests); *see also id.* at 1261 ("[I]nfringements on

prisoners' constitutional rights must not be arbitrary or irrational, nor an exaggerated response to

6

security needs." (internal quotation marks omitted)); *Daughtery v. Harris*, 476 F.2d 292, 294 (10th Cir. 1973) (rejecting contention that rectal cavity searches must be conducted by medical doctors in complete privacy); *cf., e.g., Hayes v. Marriott*, 70 F.3d 1144, 1147 (10th Cir. 1995) (reversing grant of summary judgment on Fourth Amendment claim where inmate alleged he was subjected to a video recorded "body cavity search [conducted] in the presence of over 100 people, including female secretaries and case managers from other buildings"); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (holding inmate stated an Eighth Amendment claim by alleging that during search, guards made "ribald comments and sexually explicit gestures," "forced him to perform sexually provocative acts," and female guards "were neither mere passersby nor performing [a] legitimate penological function," but "were instead invited spectators" (internal quotation marks omitted)).

Plaintiff acknowledges that he had his top button unbuttoned in violation of prison rules. Therefore, with respect to issues involving "internal order and discipline" or "institutional security," courts should accord "wide-ranging deference" to prison officials, unless there is "substantial evidence in the record to indicate the officials have exaggerated their response." *Dunn*, 880 F.2d at 1191 (quoting *Bell*, 441 U.S. at 547–48) (internal citations omitted).   Plaintiff's Fourth Amendment claims are subject to dismissal for failure to allege sufficient facts to show a constitutional violation.

### 2.  Eighth Amendment Claim

A prison official violates the Eighth Amendment when two requirements are met.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"   *Id*.   To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."

*Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).   The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."   *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).   The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).   Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).   "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."   *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.   Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id.*   "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Id.* at 837.   "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"   *Id.*   It is not enough to establish that the official should have known of the risk of harm.   *Id.*

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must

be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id.* (citations omitted).

Plaintiffs' allegations fail to show he is "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff has also failed to allege "deliberate indifference" by any defendant. Plaintiff should show cause why his claims should not be dismissed for failure to state a claim.

## VI.   Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[1] Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal

---

[1] In order to add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (20-3120-SAC) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **October 9, 2020,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **October 9, 2020**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated September 9, 2020, in Topeka, Kansas.**


**s/ Sam A. Crow__**
**Sam A. Crow**
**U.S. Senior District Judge**